**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK**
_____

**BRENDA LAMB,**

                             **Plaintiff,**

    vs.                                              **1:13-CV-00845
                                                       (MAD)**

**CAROLYN W. COLVIN,
in her official capacity as Acting
Commissioner of the Social Security
Administration,**

                             **Defendant.**
_____

**APPEARANCES:**                                   **OF COUNSEL:**

**LEGAL AID SOCIETY OF NORTHEASTERN NY**    **STUART A. KAUFMAN, ESQ.**
112 Spring Street
Suite 109
Saratoga Springs, New York 12866
Attorneys for Plaintiff

**SOCIAL SECURITY ADMINISTRATION**          **EMILY M. FISHMAN, ESQ.**
Office of Regional General Counsel
Region II
26 Federal Plaza - Room 3904
New York, New York 10278
Attorneys for Defendant

**Mae A. D'Agostino, U.S. District Judge:**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      Plaintiff commenced this action on July 17, 2013, pursuant to 42 U.S.C. § 405(g) and 1383(c)(3), seeking review of a decision by the Commissioner of Social Security denying Plaintiff's application for Supplemental Security Income ("SSI"). *See* Dkt. No. 1.

      On May 20, 2010, Plaintiff filed an application for SSI, alleging a disability onset date of April 28, 2002. *See* Dkt. No. 8, Administrative Record ("R."), at 14; *see also* Dkt. No. 1 at ¶ 7.

This application was denied on August 31, 2010. *See* R. at 55-60. Plaintiff then requested a hearing and appeared with her counsel before Administrative Law Judge ("ALJ") Arthur Patane on September 13, 2011. *See id*. at 26-47. On October 21, 2011, ALJ Patane issued a decision denying Plaintiff's application. *See id*. at 14-20. Plaintiff subsequently requested review by the Appeals Council and was denied such review on May 17, 2013, making the ALJ's decision the final decision of the Commissioner of Social Security. *See id*. at 1-3.

Presently before the Court are the parties' cross-motions for judgment on the pleadings. *See* Dkt. Nos. 10, 11.

## II. BACKGROUND

Plaintiff was born on October 12, 1964, and was forty-six years old at the time of the hearing, held on September 13, 2011. *See* Dkt. No. 10 at 2. From May 2010 through the date of the hearing, Plaintiff worked part-time through a work program called Community, Work, and Independence, Inc. (CWI). *See id*. at 3. Plaintiff testified that her job required her to push a foot pedal to fill a cat litter bag and then sew it shut. *See id*. at 3. Prior to this job, Plaintiff worked as a cleaner in a health care provider's office and in a warehouse. *See id*. at 3. Plaintiff alleges that she suffers from learning disabilities, obesity, diabetes, depression, anxiety, and a history of frequent urination as a result of kidney cancer. *See id*. at 3. The record evidence in this case is undisputed and the Court adopts the parties' factual recitations. *See* Dkt. No. 10 at 2-4; Dkt. No. 11 at 2 ("The Commissioner incorporates by reference the facts set forth in the ALJ's decision, as well as those in Plaintiff's brief, except with respect to any inferences, arguments, and conclusions made by Plaintiff").

## III. DISCUSSION

**A.     Legal Standards**

*1. Five-step analysis*

For purposes of SSI, a person is disabled when she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. §§ 1382(c)(3)(A).  There is a five-step analysis for evaluating disability claims:

> "First, the [Commissioner] considers whether the claimant is currently engaged in substantial gainful activity.  If he is not, the [Commissioner] next considers whether the claimant has a "severe impairment" which significantly limits his physical or mental ability to do basic work activities. If the claimant suffers such an impairment, the third inquiry is whether, based solely on medical evidence, the claimant has an impairment which is listed in Appendix 1 of the regulations.  If the claimant has such an impairment, the [Commissioner] will consider him disabled without considering vocational factors such as age, education, and work experience; the [Commissioner] presumes that a claimant who is afflicted with a "listed" impairment is unable to perform substantial gainful activity.  Assuming the claimant does not have a listed impairment, the fourth inquiry is whether, despite the claimant's severe impairment, he has the residual functional capacity to perform his past work.  Finally, if the claimant is unable to perform his past work, the [Commissioner] then determines whether there is other work which the claimant could perform."

*Berry v. Schweiker*, 675 F.2d 464, 467 (2d Cir. 1982); *see also Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (citations omitted).  The claimant bears the burden of proof on the first four steps, while the Social Security Administration bears the burden on the last step.  *Id.*

In reviewing a final decision by the Commissioner under 42 U.S.C. § 405, the Court does not determine *de novo* whether a plaintiff is disabled.  *See* 42 U.S.C. §§ 405(g), 1383(c)(3); *Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990).  Rather, the Court

must examine the Administrative Record to ascertain whether the correct legal standards were applied, and whether the decision is supported by substantial evidence. *See Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal v. Apfel*, 134 F.3d 496, 500-01 (2d Cir. 1998). "Substantial evidence" is evidence that amounts to "more than a mere scintilla," and it has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

If supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]." *Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992). In other words, this Court must afford the Commissioner's determination considerable deference, and may not substitute "its own judgment for that of the [Commissioner], even if it might justifiably have reached a different result upon a de novo review." *Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

### *2. Credibility determination*

"The ALJ has discretion to assess the credibility of a claimant's testimony regarding disabling pain and to arrive at an independent judgment, in light of medical findings and other evidence, regarding the true extent of the pain alleged by the claimant." *Marcus v. Califano*, 615 F.2d 23, 27 (2d Cir. 1979). The regulations set out a two-step process for assessing a claimant's statements about pain and other limitations:

> At the first step, the ALJ must decide whether the claimant suffers from a medically determinable impairment that could reasonably be expected to produce the symptoms alleged. . . . If the claimant does suffer from such an impairment, at the second step, the ALJ must

4

> consider the extent to which the claimant's symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence of record. The ALJ must consider statements the claimant or others make about his impairments, his restrictions, his daily activities, his efforts to work, or any other relevant statements he makes to medical sources during the course of examination or treatment, or to the agency during interviews, on applications, in letters, and in testimony in its administrative proceedings.

*Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010) (quotations and citations omitted).

If a plaintiff's testimony concerning the intensity, persistence or functional limitations associated with his impairments is not fully supported by clinical evidence, the ALJ must consider additional factors in order to assess that testimony, including: (1) daily activities; (2) location, duration, frequency, and intensity of any symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness and side effects of any medications taken; (5) other treatment received; and (6) other measures taken to relieve symptoms. 20 C.F.R. §§ 416.929(c)(3)(i)-(vi). The issue is not whether the clinical and objective findings are consistent with an inability to perform all substantial activity, but whether the plaintiff's statements about the intensity, persistence, or functionally limiting effects of his symptoms are consistent with the objective medical and other evidence. *See* SSR 96-7p, Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements, 1996 WL 374186, *2 (Soc. Sec. Admin. Jul. 2, 1996). One strong indication of credibility of an individual's statements is their consistency, both internally and with other information in the record. *Id.* at *5.

"After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony." *Saxon v. Astrue*, 781 F. Supp. 2d 92, 105 (N.D.N.Y. 2011) (citing, *inter alia*, 20 C.F.R. §§

5

404.1529(c)(4), 416.929(c)(4)). An ALJ rejecting subjective testimony "'must do so explicitly and with sufficient specificity to enable the Court to decide whether there are legitimate reasons for the ALJ's disbelief and whether his decision is supported by substantial evidence.'" *Melchior v. Apfel*, 15 F. Supp. 2d 215, 219 (N.D.N.Y. 1998) (quoting *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)). The Commissioner may discount a plaintiff's testimony to the extent that it is inconsistent with medical evidence, the lack of medical treatment, and her own activities during the relevant period. *See Howe-Andrews v. Astrue*, No. CV-05-4539, 2007 WL 1839891,*10 (E.D.N.Y. June 27, 2007). With regard to the sufficiency of credibility determinations, the Commissioner has stated that

> It is not sufficient for the adjudicator to make a single, conclusory statement that "the individual's allegations have been considered" or that "the allegations are (or are not) credible." It is also not enough for the adjudicator simply to recite the factors that are described in the regulations for evaluating symptoms. The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight.

SSR 96-7p, 1996 WL 374186, at *2.

### B. The ALJ's Decision

At the first step of the sequential analysis, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 20, 2010, the date of Plaintiff's application for SSI. *See* R. at 16. At step two, the ALJ concluded that Plaintiff had the following severe impairments: anxiety disorder, diabetes, history of kidney cancer, and obesity. *See id*. At the third step of the analysis, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any impairment listed in 20 C.F.R.

6

Part 404, Subpart P, Appendix 1. *See* R. at 16-17. The ALJ then found that Plaintiff had the residual functional capacity ("RFC ") to perform medium work as defined in 20 C.F.R. § 416.967(c) in a low contact setting. *See* R. at 17. At step four, the ALJ found that Plaintiff had no past relevant work. *See id.* at 19. At the fifth and final step of the analysis, relying on the Medical-Vocational Guidelines set forth in 20 C.F.R. Part 404, Subpart P, Appendix 2, the ALJ concluded that jobs existed in significant numbers in the national economy that Plaintiff could perform. *See id.* Therefore, the ALJ made a determination that Plaintiff was not disabled, as defined by the Social Security Act. *Id.*

**C.     Analysis**

*1. The ALJ's decision is supported by substantial evidence*

In her motion for judgment on the pleadings, Plaintiff first argues that the ALJ committed reversible error in failing to find that her impairments meet or equal the listings found at sections 12.04 and 12.06 of 20 C.F.R. Part 404, Subpart P, Appendix 1. *See* Dkt. No. 10 at 13-18. Specifically, Plaintiff argues that, while the ALJ performed an analysis of the 12.06 listing relating to Plaintiff's anxiety disorder, he committed reversible error in failing to find that Plaintiff's depression was a severe impairment, or that Plaintiff's conditions met or equaled the listing. *See id.* at 13. Plaintiff claims that the ALJ improperly provided great weight to the opinions of the non-examining physicians, Drs. Hochberg and Fuhrman. *See id.* Further, Plaintiff contends that the consultative examiners, Drs. Osika and Kuntz, both assessed Plaintiff as having greater limitations than indicated by Drs. Hochberg and Fuhrman. *See id.* Since the ALJ failed to determine that Plaintiff's depression was a severe impairment, Plaintiff contends

7

that he also failed to appropriately analyze Plaintiff's related symptoms under Listing 12.04, the listing for affective disorder. *See id.* at 14.

In the present matter, in concluding that Plaintiff was not under a disability within the meaning of the Social Security Act from April 28, 2002 through May 20, 2010, the ALJ adhered to the five step sequential analysis. Throughout the sequential evaluation, the ALJ properly relied upon the findings and opinions of Dr. Todd Kuntz, who performed a consultative psychological evaluation on August 13, 2010. *See* R. at 18, 281-84.[1] As the ALJ noted, Dr. Kuntz believed that, although "more complicated tasks would likely require supervision or follow up," Plaintiff could understand and follow simple instructions and perform simple tasks independently. *See* R. at 18, 284. Notably, this assessment corresponds with the factors to be considered in determining a claimant's mental RFC. *See* 20 C.F.R. § 416.945(c). Dr. Kuntz also noted, however, that he believed Plaintiff's ability to interact with others was limited. *See* R. at 18, 284. To account for Dr. Kuntz's assessment that Plaintiff had a limited ability to relate and interact appropriately with others, the ALJ appropriately restricted Plaintiff to work in a low contact setting. *See id.* at 17.

Plaintiff is correct that Dr. Kuntz diagnosed Plaintiff as having major depressive disorder and an anxiety disorder, not otherwise specified. *See* R. at 284. However, his overall assessment of Plaintiff, as provided in his detailed report, fully supports the ALJ's determination. *See* 20 C.F.R. § 416.927(d)(3) (providing that the more a medical source presents relevant evidence to support an opinion, the more weight it should be assigned); *see also Mongeur v. Heckler*, 722

---

[1] Other than her prescription for Zoloft from her primary care physician, Plaintiff did not receive regular psychological treatment. Accordingly, the Social Security Administration arranged for a consultative examination, as well as state agency expert review, to assess Plaintiff's alleged psychological impairments.

F.2d 1033, 1039 (2d Cir. 1983) (finding that the report of a consultative physician may constitute substantial evidence to support an ALJ's finding that a claimant is not disabled).

Moreover, the ALJ also properly considered the opinion of psychological consultant Dr. Hochberg. Based on his analysis of the record, Dr. Hochberg recommended denying Plaintiff's claim. *See* R. at 285. Dr. Hochberg found that Plaintiff had mild to moderate functional impairment and found that she would need a position "with limited interpersonal demands and contact." *Id.* Dr. Hochberg noted that Plaintiff had displayed irritable and dramatic behavior, depressed mood, and some difficulty focusing, but that her mental status was otherwise unremarkable. Finally, Dr. Hochberg found that, other than Plaintiff's social isolation, her "ADL's [activities of daily living] were not substantially impaired." *Id.*; *see also* R. at 287-300. The ALJ properly relied on this evidence since Dr. Hochberg is a qualified psychologist, who is an expert in the evaluation of medical issues in disability claims under the Act, and his opinion is the type of evidence an ALJ is permitted to consider. *See* 20 C.F.R. § 404.1527(f)(2)(i); Social Security Ruling ("SSR") 96-6p.

The ALJ's determination is further supported by Plaintiff's own testimony at the hearing, as well as the evidence in the record. As the ALJ noted, the record establishes that Plaintiff is able to maintain her own self care, do laundry, cook, clean, and shop, work at a factory for fifteen-hours per week, and volunteer regularly at a soup kitchen. *See* R. at 18 (citations omitted). Further, Plaintiff testified at the hearing that if her then employer, Community Work Independence ("CWI"), permitted her to, she would work more than the fifteen hours per week. *See id.* at 43. In fact, Plaintiff indicated that she would like to be permitted to work forty hours per week, but CWI only had her scheduled for two days per week at that point. *See id.* Finally,

9

the record indicates that Plaintiff maintains her own finances, including paying her monthly mortgage. *See id.* at 42.

Moreover, as Defendant correctly contends, the ALJ properly evaluated the credibility of Plaintiff's statements regarding her alleged symptoms under the regulatory framework. *See* R. at 17-18. Under the regulations, subjective symptoms alone cannot be the basis for a finding of disability. Rather, a claimant must have a medically determinable impairment, established through medically acceptable clinical or diagnostic findings, that could reasonably be expected to produce the symptoms alleged. *See* 20 C.F.R. § 416.929(b). As such, if the claimant's symptoms suggest greater restriction of function than can be demonstrated by objective medical evidence alone, consideration will also be given to other factors, including the following: (1) the claimant's daily activities; (2) the nature, duration, frequency and intensity of the symptoms; (3) precipitating and aggravating factors; and (4) the type of medication and other treatment or measures which the claimant uses for the relief of pain and other symptoms. *See* 20 C.F.R. § 416.929(c)(3); SSR 96-7p.

In the present matter, after a careful review of the record, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to produce the alleged symptoms. The ALJ found, however, that Plaintiff's statements concerning the intensity, persistence and limiting effects of her symptoms were not credible as to the disabling extent alleged. *See* R. at 17. In accordance with the regulations, the ALJ properly considered Plaintiff's extensive activities of daily living. *See id.* at 18. As the ALJ noted, Plaintiff admitted in her testimony, to Dr. Kuntz, and on her Function Report, that, notwithstanding her alleged impairments, she volunteered five-days per week at a soup kitchen, had no problems with her personal care, drove, did laundry, prepared meals, washed dishes, cared for her cat, cleaned, paid

her bills, and shopped for her household. *See* R. at 18, 35-36, 42-43, 129-32, 283. Plaintiff also testified that she worked fifteen-hours per week at CWI, a work-training program, and admitted that she would work more hours if a position became available. *See id.* at 18, 31, 43.

As the ALJ noted, these extensive activities of daily living were consistent with his determination that Plaintiff could perform basic work activities in a low contact setting, thereby contradicting Plaintiff's allegations of total disability. *See* R. at 18; *see also Gernavage v. Shalala*, 882 F. Supp. 1413, 1419 n.6 (S.D.N.Y. 1995) (holding that "[d]eference should be accorded the ALJ's determination because he heard plaintiff's testimony and observed his demeanor") (citations omitted).

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's well-founded mental RFC determination.

### *2. The ALJ properly evaluated Plaintiff's depressive disorder and learning disability*

Plaintiff argues that, although the ALJ correctly found that she had severe impairments including diabetes, anxiety disorder, history of kidney cancer, and obesity, he erred in failing to find that Plaintiff's depressive disorder and learning disability were also severe impairments, "despite objective overwhelming evidence." *See* Dkt. No. 10 at 18-21. Essentially, Plaintiff argues that the ALJ failed to consider all of her medical impairments in combination, throughout the course of his analysis. *See id.*

First, as Defendant correctly contends, as to Plaintiff's alleged learning disability, Plaintiff points to no clinical or diagnostic evidence of this condition, save for her own self-reporting. *See, e.g.*, R. at 275-84. Plaintiff's own self-serving statements, in the absence of medical evidence to support such a finding, are insufficient to establish a severe impairment. *See Bowen v. Yukert*,

11

482 U.S. 137, 146 n.5 (1987); 20 C.F.R. § 416.912(a). In any event, while the ALJ found that Plaintiff's anxiety disorder was her only severe mental impairment, any arguable error with regard to this was harmless, since the ALJ nevertheless continued with the sequential evaluation analysis and ultimately did consider all of Plaintiff's mental impairments, in combination, in evaluating her RFC. *See Stanton v. Astrue*, 370 Fed. Appx. 231, 233 n.1 (2d Cir. 2010) (citations omitted); *Sweat v. Astrue*, 08-cv-11008, 2011 WL 2532932, *5 (N.D.N.Y. May 23, 2011) (citations omitted).

As discussed in greater detail above, the ALJ properly considered the findings and opinions of Dr. Kuntz, which reflected Plaintiff's overall cognitive and emotional functioning. *See* R. at 17, 281-84. Dr. Kuntz performed a comprehensive mental status examination that took into account Plaintiff's intellectual functioning and depressed mood. *See id.* at 283-84. Dr. Kuntz diagnosed major depressive disorder and estimated Plaintiff's intelligence to be "below average." *See id.* at 284. Nevertheless, Dr. Kuntz ultimately found that, notwithstanding the totality of her mental impairments, Plaintiff could perform simple tasks independently, that more complicated tasks would likely require supervision or followup, and that she was limited only in her ability to relate with others. *See id.* at 284. The ALJ properly discussed and relied upon Dr. Kuntz's assessment, as supported by the opinion of Dr. Hochberg, incorporating the assessed limitations directly into the RFC assessment. *See* R. at 18. In so doing, the ALJ considered the combined effects of Plaintiff's mental impairments.

### *3. The ALJ properly considered all of Plaintiff's physical and mental impairments in combination*

Plaintiff also alleges that the ALJ failed to consider the combined effects of her mental impairments with her physical impairments. *See* Dkt. No. 10 at 21-22. Plaintiff's argument is

without merit. The ALJ found that Plaintiff had the following severe impairments: anxiety disorder, diabetes, history of kidney cancer, and obesity. *See* R. at 16. Thereafter, the ALJ specifically found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. *See* R. at 16. This finding demonstrates that the ALJ considered the cumulative effect of Plaintiff's impairments. *See Rivers v. Astrue*, 280 Fed. Appx. 20, 23 (2d Cir. 2008).

Moreover, although the claimant carries the burden of proof on the issue of disability at steps one through four, Plaintiff cites to no evidence of how her diabetes, history of kidney cancer, or obesity impacted on either her mental impairments or her overall functional abilities. *See Berry*, 675 F.2d at 467. As the ALJ noted, the Medical Source Statement of Ability to do Work-Related Activities (Physical), dated April 14, 2011, indicated that Plaintiff had no physical work-related limitations that were expected to last for twelve months or longer. *See* R. at 18, 346-51. Further, Dr. Perrotti, from Capital Region Urological Surgeons, indicated that Plaintiff has recovered from her March 2003 laparoscropic nephrectomy. *See id.* at 342. Dr. Perrotti stated that Plaintiff reported feeling well, that she had no abdominal pain, no flank pain, no change in her overall health, and that she was "voiding without difficulty." *See id.*

In the absence of any pertinent medical evidence indicating a reduction in Plaintiff's physical functioning, nothing additional could be expected of the ALJ in considering the combined effects of Plaintiff's physical and mental impairments throughout the sequential analysis. *See Rivers*, 280 Fed. Appx. at 23. Based on the record as a whole, the Court finds that the ALJ properly considered the combined effect of Plaintiff's impairments in determining that she was not disabled.

***4. The ALJ correctly found that Plaintiff's impairments do not meet or equal the Listings found at 12.04 and 12.06 of 20 C.F.R. Part 404, Subpart P, Appendix 1 for the relevant time periods***

Plaintiff also argues that the ALJ erred at step three of the sequential evaluation. Plaintiff contends that her anxiety and depression meet the criteria of Listings 12.04 (affective disorders) and 12.06 (anxiety related disorders), and that she is, therefore, presumptively disabled. *See* Dkt. No. 10 at 12-18.

For a claimant to show that her impairment meets a listing, the claimant must meet all of the specified medical criteria of that Listing. *See Sullivan v. Zebley*, 493 U.S. 521, 530-31 (1990). An impairment that manifests some but not all of the Listing's criteria does not qualify. *See id.*

In the present matter, the ALJ considered the criteria of Listing 12.06, but found that the "paragraph B" criteria of this Listing were not met. Specifically, the ALJ found that, "[b]ecause the claimant's mental impairment does not cause at least two 'marked' limitations or one 'marked' limitation and 'repeated' episodes of decompensation, each of extended duration, the 'paragraph B' criteria are not satisfied." *See* R. at 16. Since the criteria of Listings 12.04 and 12.06 are identical, any failure on the ALJ's part to specifically analyze Plaintiff's symptoms under Listing 12.04 is harmless. *See Rodriguez v. Astrue*, No. 07CV3309, 2008 WL 2073508, *8 n.22 (S.D.N.Y. May 14, 2008).[2]

---

[2] The Listing of Impairments, set forth in Appendix 1 of 20 C.F.R. Part 404, Subpart P, describes for each of the major body systems impairments that are considered severe enough to prevent an individual from performing any gainful activity, regardless of his or her age, education or work experience. 20 C.F.R. § 40.1525. Paragraph (B) of both §§ 12.04 and 12.06 are identical. They require at least two of the following: (i) marked restriction of activities of daily living; or (ii) marked difficulties in maintaining social functioning; or (iii) marked difficulties in maintaining concentration, persistence, or pace; or (iv) repeated episodes of decompensation, each of extended duration. Decompensation is an exacerbation or temporary increase in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties performing activities of daily living, maintaining social relationships, or maintaining

(continued...)

The ALJ found that the Paragraph B criteria were not satisfied, since Plaintiff had only mild limitations in her activities of daily living, moderate limitations in her ability to maintain social functioning, and moderate limitations in her ability to maintain attention and concentration. *See* R. at 17-18. The ALJ noted that this assessment was consistent with Dr. Kuntz's evaluation, in which Dr. Kuntz did not describe any marked limitations in Plaintiff's functioning. *See id.* at 18. Further, with respect to Plaintiff's activities of daily living, as discussed more fully above, the ALJ discussed the fact that Plaintiff volunteered at a soup kitchen several days each week, had no problems with her personal care, drove, and performed a wide variety of household chores. *See* R. at 18, 35-36, 42-43, 129-32, 283. Plaintiff's reliance on an observation of Tori Losey of CWI regarding Plaintiff's hygiene is unavailing. *See* Dkt. No. 10 at 13, 23. Ms. Losey is not a medical observer and Ms. Losey did not connect Plaintiff's alleged hygiene issues to any particular mental impairment, as required under Paragraph B of Listings 12.04 and 12.06.

With regard to Plaintiff's limitations in social functioning, the ALJ acknowledged Plaintiff's limitations, as documented by Dr. Kuntz. *See* R. at 18, 283-84. Based on his mental status examination, Dr. Kuntz concluded that Plaintiff's ability to relate with others was limited. *See id.* at 284. In order to account for this limitation, the ALJ restricted Plaintiff to low-contact work. *See id.* at 17-18. Plaintiff's reliance on her own self-reporting and the fact that she broke down in tears during her examination by Dr. Kuntz are insufficient to support her argument that she has a marked limitation in this area. Although Dr. Kuntz did note that Plaintiff became emotionally upset during his examination, it occurred while she discussed her history of sexual abuse and limited success with work. *See id.* at 283-84.

---

²(...continued)
concentration, persistence and pace. *See* Appendix 1 to 20 C.F.R. Part 404 Subpart P, § 12.00C4.

Moreover, the ALJ also correctly determined that Plaintiff does not have marked limitations in maintaining concentration, persistence, and pace. On examination by Dr. Kuntz, Plaintiff was able to sustain sufficient concentration to complete simple problems and tasks, such as reciting five digits forwards, spelling backwards, and completing the majority of simple math problems correctly. *See id.* at 283. Based on the results of his examination, Dr. Kuntz described Plaintiff's attention and concentration as "limited to fair," thereby indicating a moderate limitation. *See id.* at 284. Plaintiff's conclusory arguments to the contrary, unsupported by any medical opinions, are without merit.

Based on the foregoing, the Court finds that substantial evidence supports the ALJ's determination that Plaintiff did not meet or equal the requirements of Listings 12.04 or 12.06 and that the ALJ properly based his determination on the medical evidence in accordance with 20 C.F.R. § 416.927.

### *5. The ALJ properly considered the entirety of the relevant evidence in evaluating Plaintiff's Residual Functional Capacity*

Plaintiff contends that the ALJ failed to consider the totality of the evidence in rendering his RFC determination. *See* Dkt. No. 10 at 23-26. Plaintiff argues that, despite multiple mentions in the record of her "diagnosis of depressive disorder, and her continued pharmaceutical treatment for this condition, and despite the fact that she broke down in tears multiple times during her consultative examination with Dr. Kuntz, even while compliant with medication, the resulting effects of this condition were never even considered in the decision." *Id.* at 24. Further, Plaintiff contends that there are repeated mentions in her mental health and other records regarding her "poor social and family supports, and repeated disagreements with almost all of her family members, a professor, and co-workers." *Id.* at 25. Moreover, Plaintiff asserts that, in regards to

16

her activities of daily living, the ALJ ignored relevant evidence in the record in determining that she does not have a marked limitation. *See id.*

As an initial matter, the Court notes that where the rationale of the ALJ's decision can be gleaned from the record, there is no requirement that he specifically discuss or reconcile every potentially conflicting piece of evidence. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983). Although Plaintiff is correct that some evidence in the record supports her position, substantial evidence supports the ALJ's determination; and, therefore, the Commissioner's decision must be upheld. *See Rosado v. Sullivan*, 805 F. Supp. 147, 153 (S.D.N.Y. 1992) (holding that if supported by substantial evidence, the Commissioner's finding must be sustained "even where substantial evidence may support the plaintiff's position and despite that the court's independent analysis of the evidence may differ from the [Commissioner's]"); *see also Valente v. Sec'y of Health and Human Servs.*, 733 F.2d 1037, 1041 (2d Cir. 1984).

Plaintiff relies heavily on the report from her supervisor at CVI, Tori Losey. *See* Dkt. No. 10 at 25. In her report, Ms. Losey indicated that when Plaintiff began a part-time work placement, Plaintiff had difficulty focusing, was easily distracted, and was having difficulty in changes to the routine. *See id.*; *see also* R. at 423. Ms. Losey also indicated that Plaintiff's behavior and focus further deteriorated over the first few weeks. *See id.* Plaintiff argues that it was error for the ALJ to fail to consider this evidence. *See* Dkt. No. 10 at 25.

Ms. Losey's statement is an "other source" as defined in the regulations at 20 C.F.R. §§ 404.1513(d) and 416.913(d). Therefore, Ms. Losey's opinion may be considered by the ALJ, but is "entitled to significantly less weight" than the medical evidence in the record. *See Craig v. Chater*, 76 F.3d 585, 590 (4th Cir. 1996). More significantly, however, any error by the ALJ in not specifically discussing Ms. Losey's report is ultimately irrelevant to the outcome of this case,

17

as Plaintiff has failed to produce any clinical or diagnostic evidence of disability. *See Zabala v. Astrue*, 595 F.3d 402, 409 (2d Cir. 2010).

Accordingly, the Court finds that the ALJ's RFC assessment is supported by substantial evidence and was made in compliance with the governing regulations.

## IV. CONCLUSION

After carefully reviewing the entire record in this matter, the parties' submissions and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for judgment on the pleadings (Dkt. No. 11) is **GRANTED**; and the Court further

**ORDERS** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and the Court further

**ORDERS** that the Clerk of the Court shall enter judgment in Defendant's favor and close this case; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on all parties in accordance with the Local Rules.

**IT IS SO ORDERED.**

Dated: November 14, 2014
       Albany, New York

Mae A. D'Agostino
U.S. District Judge